UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CURTIS McGOUGHY #433421,

    Plaintiff,         Hon. Robert J. Jonker

v.               Case No. 2:25-cv-70

SARAH SCHROEDER, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

  This matter is before me on Defendants Schroeder and Racine's Motion for Summary Judgment raising the affirmative defense of failure to exhaust. (ECF No. 14.) Plaintiff has failed to respond to the motion within the time permitted by Western District of Michigan Local Civil Rule 7.2(c).[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** the motion and **dismiss without prejudice** Plaintiff's claims against Defendants Schroeder and Racine for lack of exhaustion.

### I. Background

  Plaintiff, who is currently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP), filed a complaint against several MDOC employees on April 18, 2025, alleging claims pursuant to 42 U.S.C. § 1983 based on events that occurred at MBP in August and September 2024 and in March 2025.

---

[1] Although Plaintiff is proceeding pro se, he is still expected to comply with the applicable court rules. *See Strohmeyer v. Chase Bank USA, N.A.*, No. 3:17-cv-443, 2018 WL 2669991, at *2 (E.D. Tenn. June 4, 2018) ("It is correct that pro se parties are expected to comply with the rules of procedure just as parties represented by counsel must do."); *Jones v. Graley,* No. 2:05-cv-773, 2006 WL 1697637, at *1 (S.D. Ohio June 20, 2006) (although federal courts have treated pro se litigants more leniently, they "are still expected to comply with the procedural rules of the court").

Plaintiff alleges that he has a serious breathing problem for which he has been prescribed a C-Pap breathing machine and a detail for all night power in his cell. (ECF No. 1 at PageID.4.) He alleges that on August 30, 2024, the power in his cell was shut off at 12:00 AM. Plaintiff spoke with Defendant Unknown CO #1 about the issue. Plaintiff complained that he was having chest pains and needed to see the nurse. Unknown CO #1 responded that "he'd turn [the] power on," but he never did, nor did he alert the nurse. (*Id.*)

On September 1, 2024, Plaintiff told Defendant Nurse Racine that his power was being turned off at night and he was supposed to have all night power for his C-Pap machine. (*Id.*)

From September 1, 2024, through September 3, 2024, Plaintiff continued to alert third shift officers, including Unknown CO #2, Unknown CO #3, and Unknown CO #4, that the power in his cell was off and he was having chest pain, shortness of breath, and coughing, and he felt like he was going to die. However, the officers did nothing. (*Id.* at PageID.4–5.) Plaintiff alleges that he went through the grievance process and alerted Defendant Warden Schroeder of his issue and how the officers were violating policy and not taking his health seriously. (*Id.* at PageID.5.)

On September 24, 2024, Plaintiff complained to Unknown COs ##5 and 6, who worked third shift, about the lack of power, but they laughed at him. (*Id.*) Plaintiff was in perpetual fear for his life all night due to continual chest pain and breathing attacks because the power had been turned off. (*Id.*)

On March 20, 2025, Plaintiff spoke with Defendant Schroeder about his sleep C-Pap. However, Defendant Schroeder told plaintiff that he was not allowed to have his C-Pap machine while on suicide watch. Plaintiff told her that he was not on suicide watch, but she just looked at him and walked away. (*Id.* at PageID.6.) On March 24, 2025, in Base Cell-9, Plaintiff spoke with the officers and nurses on first and second shift about his C-Pap machine. Defendant Unknown

CO #1 and a nurse told Plaintiff that it was lost. In addition, Defendants Unknown COs ##2 and 3 and two nurses kept telling Plaintiff that his C-Pap machine was lost, and they could not do anything about it, and he should stop asking about it. (*Id.*)

Defendants Warden Schroeder and Nurse Raccine now move for summary judgment based on Plaintiff's failure to exhaust his administrative remedies on his claims against them.

## II.  Motion Standard

Generally, where the non-moving party fails to respond to a motion for summary judgment, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)). In addition, because failure to exhaust is an affirmative defense upon which a defendant bears the burden of proof, *see Jones v. Bock*, 549 U.S. 199, 216 (2007), the Court must ensure that "no reasonable trier of fact could find other than for [Defendants]." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

## III.  Discussion

The Supreme Court has held that a prisoner properly exhausts a claim for purposes of 42 U.S.C. § 1997e(a) by complying with the prison's "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Jones*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones*, 549 U.S. at 218. A prisoner incarcerated with the MDOC must "pursue a grievance through all three steps of the grievance process [set forth in MDOC Policy Directive 03.02.130]." *Weatherspoon v. Strahan*, No. 18-2210, 2019 WL 5306842, at *1 (6th Cir. June 4, 2019). This

3

process must be completed at all levels prior to filing an action in federal court.[2] *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

In support of their motion, Defendants attach a Step III Grievance Report for Plaintiff dated April 28, 2025, which shows Plaintiff's grievance activity at MBP between August 2024 and the date he filed his complaint in this action. (ECF No. 15-4.) The Step III report shows that Plaintiff exhausted two grievances during this period, Grievance MBP-24-10-1059-3f (1059 Grievance) and Grievance MBP-24-09-0971-03e (0971 Grievance), through Step III prior to filing his complaint. (*Id.* at PageID.85.)

Plaintiff filed the 0971 Grievance on or about September 1, 2024, regarding an incident that occurred on August 30, 2024. Plaintiff complained about lack of power to his cell for his C-Pap machine. He indicated that he spoke with G-Unit officers and healthcare for his attempt to resolve the issue. (*Id.* at PageID.96.) Plaintiff pursued the grievance through all three levels, and it was denied at each step. (*Id.* at PageID.94–97.) Plaintiff filed the 1059 Grievance at Step I on or about September 24, 2024. As with the 0971 Grievance, Plaintiff indicated in this grievance that he spoke with G-Unit officers and healthcare to resolve the issue. (*Id.* at PageID.89.) Plaintiff alleged that the issue was that he did not have 24-hour power for his C-Pap machine. (*Id.*) Plaintiff pursued this grievance through all three levels, and it was denied at each step. (*Id.* at PageID.86–88.),

---

[2] Defendants attach to their supporting brief the versions of MDOC Policy Directive 03.02.130 effective September 25, 2023, and October 21, 2024, as the events Plaintiff alleges occurred under both versions. (ECF No. 15-2; ECF No. 15-3.) For purposes of this motion, the differences between the two versions are not material.

### A. Defendant Schroeder

Neither the 0971 Grievance nor the 1059 Grievance could have exhausted Plaintiff's claim against Defendant Schroeder. As set forth above, both of those grievances concerned the lack of power in Plaintiff's cell for his C-Pap machine in August and September 2024. Plaintiff's claim against Defendant Schroeder is that he spoke to her on March 20, 2025, about being denied his C-Pap machine and that she responded that he could not have it while on suicide watch. (ECF No. 1 at PageID.6.) These are two different issues from two different periods of time. Moreover, Plaintiff's allegation that he went through the grievance process and alerted Warden Schroeder of his issue about how the officers were violating policy and not taking his health seriously is insufficient to exhaust a claim against her. (*Id.* at PageID.5.) The fact that Defendant Schroeder was the Step II respondent for both of Plaintiff's grievances, which complained about the failure of corrections officers to provide power to his cell, is alone insufficient to put Defendant Schroeder on notice that he was complaining about her conduct. *See Claybron v. DeAngelo*, No. 21-cv-11953, 2023 WL 2572456, at *4 (E.D. Mich. Mar. 20, 2023) (holding that a warden's role as the Step II respondent was irrelevant to the issue of exhaustion, as nothing in the plaintiff's grievance alerted prison officials that he was challenging the warden's conduct).

### B. Defendant Racine

Whether either grievance exhausted a claim against Defendant Racine is a closer question. Plaintiff alleges in his complaint that he told RN Racine about the lack of power for his C-Pap machine on September 1, 2024, but he does say what, if anything she said in response. Neither grievance identified RN Racine or any other prison staff by name.

Where a prisoner fails to identify a prison official by name, his grievance can still fulfill the purposes of exhaustion by the inclusion of other information identifying the official, such as

the official's title or position or even the facts set forth in the grievance. *Cary v. Washington*, No. 17-13217, 2018 WL 5117812, at *8 (E.D. Mich. July 31, 2018), *report and recommendation adopted*, 2018 WL 4501480 (E.D. Mich. Sept. 20, 2018) (collecting cases); *see also Christian v. Michigan Dep't of Corrs.-Health Servs.*, No. 12-12936, 2013 WL 5348832, at *4–5 (E.D. Mich. Sept. 24, 2013) (concluding that the plaintiff's general reference to "health services" in combination with specific recitations of the dates and subjects of health care kites sent to providers sufficed to identify them as "the target of the grievance"); *Harrington v. Smolinski*, No. 1:05-CV-688, 2006 WL 549383, at *3 (W.D. Mich. Mar. 6, 2006) ("Although Plaintiff did not mention Defendant Smolinski by name, he sufficiently identified her by the title of 'Classification Director.'"). In *Hill v. Buchanan*, No. 21-1673, 2022 WL 16580149 (6th Cir. Sept. 8, 2022), in one of his two grievances at issue, the plaintiff did not identify any individual by name but instead referred only to "health care" and "medical" in general, as Plaintiff did here in both of his grievances. *Id.* at *3. The Sixth Circuit nonetheless held that the grievance properly exhausted the plaintiff's claim against the nurse because: (1) prison officials construed the grievance as alleging that the plaintiff did not receive proper medical care for his injury on a specific date; (2) the officials addressed the medical care that the plaintiff had received on that date; and (3) although the response did not identify any healthcare worker by name, the plaintiff's medical records showed that the defendant nurse was the healthcare worker who treated the plaintiff on the specified date. *Id.* at *4.

In contrast to the grievance at issue in *Hill*, the grievances at issue here did not sufficiently identify Nurse Racine as the subject of the grievance. First, Plaintiff complained about the lack of power in his cell for his C-Pap machine, not a lack of medical care. Second, prison officials did not construe the grievances as having to do with a lack of, or inadequate, medical care. The Step I

6

responses show that the respondents addressed the lack of power in Plaintiff's cell as a facilities issue, not a healthcare issue. When addressing the 0971 Grievance, the respondent examined Plaintiff's cell, determined that he did not have 24-hour power for his C-Pap machine, and moved him to another unit that could meet his needs. On September 12, 2024—the same day Plaintiff was moved—the respondent submitted a work order request to provide Plaintiff 24-hour power in his cell. (ECF No. 15-4 at PageID.97; *see also id.* at PageID.90 (determining that Plaintiff was "now housed in a cell that provides 24-hour power").) Finally, in contrast to *Hill*, there is no extra-grievance basis, such as medical records, that would have alerted prison officials that Nurse Racine was involved in any way in the failure to provide Plaintiff power for his C-Pap machine. Accordingly, I conclude that Plaintiff also failed to exhaust his claim against Defendant Racine.

## IV.  Conclusion

For the foregoing reasons, I recommend that the Court **grant** Defendants' motion (ECF No. 14) and **dismiss without prejudice** Plaintiff's claims against Defendants Schroeder and Racine for lack of exhaustion.

Dated: September 29, 2025                     /s/ Sally J. Berens
                                        SALLY J. BERENS
                                        U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).